999 F.2d 541
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger L. RODNEY (92-3035) William F. Metz (92-3047),
Defendants-Appellants.
 Nos. 92-3035, 92-3047.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1993.
 
 Before NELSON and SILER, Circuit Judges, and MILES, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant Roger L. Rodney appeals his conviction for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and for three counts of distribution and/or possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Rodney contends that the district court abused its discretion in denying his motion for mistrial based on alleged prosecutorial misconduct committed during the government's closing argument. Defendant William F. Metz appeals his conviction for manufacturing cocaine, in violation of 21 U.S.C. § 841(a)(1), and for distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Metz contends that the district court erred in denying his motion for disclosure of the identity of a confidential informant, and that the district court abused its discretion in denying his motion for mistrial based on alleged prosecutorial misconduct committed during the government's cross-examination of Metz. For the reasons which follow, we AFFIRM the judgment of the district court.
 
 FACTS
 
 2
 In January, 1991, the Columbus Police Department and the Bureau of Alcohol, Tobacco, and Firearms conducted an investigation of drug activity at an apartment in Gahanna, Ohio, where defendant William Metz resided. On January 26, 1991, undercover detectives sent a confidential informant to the address to buy a $40 bag of marijuana. The next day, the confidential informant, accompanied by Detective Enoch White, returned to the address to buy more marijuana. At that time, the confidential informant introduced White to defendant William Metz. White purchased marijuana from Metz and a juvenile.
 
 
 3
 White returned to Metz' apartment on February 6, 1991, accompanied by the confidential informant and Special Agent Larry Ford of the Bureau of Alcohol, Tobacco, and Firearms, who was also working undercover. Ford told Metz that he wanted to buy crack. Metz said he would have to contact his supplier. Metz then called Galvin Bonner, who came to the apartment a short time later. Bonner was introduced to the undercover officers, and then departed to obtain the drugs.
 
 
 4
 One hour later, the entire group met again at Metz' apartment. Metz agreed to allow Bonner to use his kitchen to convert the cocaine which Bonner had obtained into crack. During the "cooking" process, Metz even provided Bonner with a coat hanger for stirring the cocaine. After the conversion process was completed, Bonner gave the drugs to Ford, in exchange for $325.
 
 
 5
 On February 19, 1991, Ford paged Bonner and requested to buy more cocaine. Defendant Rodney, who was with Bonner at the time of the page, supplied Bonner with the cocaine for sale to Ford. Ford arranged to meet Bonner at a gas station for the transaction. Bonner arrived in a Ford Escort, driven by Rodney. Bonner went over to agent Ford's car and made the sale.
 
 
 6
 On February 26, 1991, agent Ford again called Bonner to arrange another purchase of drugs, this time crack cocaine. Bonner called his supplier, Delano Garland, who in turn told Rodney what Ford wanted to buy. Rodney provided cocaine to Bonner, who again arranged to meet Ford at the same gas station for the exchange. This time, Rodney did not accompany Bonner to the gas station.
 
 
 7
 On March 6, 1991, Ford again contacted Bonner to arrange another purchase of crack cocaine. Bonner contacted his supplier, who in turn contacted Rodney. On March 7, 1991, Rodney provided Bonner with cocaine, which Bonner converted into crack. After the conversion was complete, Rodney, driving his Ford Escort, accompanied Bonner to the same gas station again, in order to meet agent Ford. While discussing the transaction with Bonner, agent Ford gave an arrest "signal" to a team of officers who were standing by. When Rodney saw the officers converging on the scene, he ran. Bonner was arrested, and later agreed to cooperate with authorities.
 
 
 8
 As part of his cooperation, Bonner supplied federal agents with information that Rodney had additional amounts of cocaine hidden in an oil can in his Ford Escort. The car had been impounded by police, but was later released to the Ford Credit Company. Agent Larry Ford verified through the company that the oil can was still in the car, that it contained no liquid, and that Rodney had contacted the company several times attempting to claim his personal property which had been in the car at the time of impoundment. Arrangements were made to have federal agents present when Rodney appeared at the company's offices to claim his property. On May 28, 1991, Rodney was arrested immediately after claiming his property, in possession of the oil can which was found to contain cocaine.
 
 
 9
 On June 28, 1991, a federal grand jury returned a six-count indictment against both Rodney and Metz, charging them with various violations of federal narcotics laws. Subsequently, a superseding eight-count indictment was returned. A jury trial began on September 16, 1991, and concluded three days later. Rodney was convicted on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and three counts of distribution and/or possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was sentenced to 121 months imprisonment. Metz was convicted on one count of manufacturing cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was sentenced to 36 months imprisonment on the two counts, to run concurrently.
 
 ANALYSIS
 I. Roger L. Rodney
 
 10
 Defendant Rodney contends that he was denied a fair trial because of the government's improper "vouching" for the credibility of Galvin Bonner, a government witness who fingered Rodney as his cocaine supplier. Rodney points to three occasions during the government's closing argument in which government counsel improperly vouched for the credibility of Bonner. The first incident occurred when government counsel made the following statements to the jury:
 
 
 11
 Now the defense is going to get up and say Galvin Bonner should not be believed ...
 
 
 12
 ... and the court has the ability to sentence [Bonner] lower than that, but that individual is facing 15 years to life, and he got up there and told you what happened. He told you the truth. He didn't try to make anybody look worse or make anybody look better. He just tried to tell you what happened.
 
 
 13
 And when you look at his testimony, consider how it is supported by other evidence. Consider how it is corroborated. Corroboration, that is the key. How is Galvin Bonner's testimony corroborated by other evidence, by other testimony? When you consider that, you will see that it is corroborated up to the hilt.
 
 
 14
 Rodney's counsel made no objection. The second incident occurred during the government's rebuttal, when government counsel made the following statement:
 
 
 15
 Let's look at Galvin Bonner. Again, he pled to the two most serious charges in his indictment. Ten years to life and five years that has to be served consecutively. Yes, the other charges were dismissed. Zero to 20, zero to 25, 5 to 40. Would they add any time? I would submit to you, no, ladies and gentlemen. He pled to the most serious charges, 15 to life. What a deal. And if he gets a couple of years off that, that is a great deal, too.
 
 
 16
 But he came in and he told you the truth, he told you what--
 
 
 17
 Rodney's immediate objection was sustained, and the district court instructed the jury, "you will determine what the truth is in the case." Government counsel then continued with his rebuttal, making what Rodney argues is the third improper statement:
 
 
 18
 I submit to you, ladies and gentlemen, that Galvin Bonner was a credible witness.
 
 
 19
 Rodney's second objection was then overruled. Rodney moved to strike this last statement, and asked the court to declare a mistrial on the basis of prosecutorial misconduct. The district court denied the motions and allowed the prosecutor to continue with his argument.
 
 
 20
 "A government attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence." United States v. Hurst, 951 F.2d 1490, 1502 (6th Cir.1991), cert. denied, 112 S.Ct. 1952 (1992). Initially, in determining whether such misconduct may form a basis for reversal, a threshold determination must be made whether government counsel's comments "can be reasonably construed to be based on personal belief." United States v. Bess, 593 F.2d 749, 756 (6th Cir.1979). Even if the statement may be construed to be based on personal belief, no per se rule of reversible error applies. Rather, this Court will reverse a conviction based on prosecutorial misconduct only if the resulting prejudice permeates the entire trial. United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990); United States v. Krebs, 788 F.2d 1166, 1177 (6th Cir.), cert. denied, 479 U.S. 930 (1986). "[T]he complained-of conduct will not rise to reversible error ... if it is not flagrant, where proof of guilt is over-whelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." Bess, 593 F.2d at 757.
 
 
 21
 When viewed in context, government counsel's third comment--"I submit to you ... that Galvin Bonner is a credible witness"--cannot reasonably be construed to be based on personal belief. This Court has previously held that the use of the words, "I submit" is not the equivalent of expressing a personal opinion. United States v. Stulga, 584 F.2d 142, 147 (6th Cir.1978). The same cannot be said for government counsel's other two statements--"he told you the truth"--which can reasonably be construed as personal vouching for Bonner's credibility, even in context.
 
 
 22
 The impact of "vouching" is undoubtedly more acute when the jury faces difficult credibility issues, as they undoubtedly did in this case. Bess, 593 F.2d at 755. However, notwithstanding the importance of Bonner's testimony, we conclude that the conduct of the government in this case was neither so egregious nor pervasive that the defendant was denied a fair trial. The misconduct cannot be characterized as severe. Notably, the government's first reference to Bonner's credibility (i.e., "he told you the truth") went unchallenged, and the district court sustained the defendant's objection to virtually the same comment made during rebuttal. The district court then promptly cautioned the jurors to make their own credibility determination. This cautionary instruction to the jury, particularly when considered in conjunction with the court's instructions to the jurors at conclusion of the case[1], negated any prejudicial effect resulting from the government's remarks. See United States v. Roberts, 986 F.2d 1026, 1032 (6th Cir.1993) (court's instructions, including instruction that "[t]he lawyers' statements and arguments are not evidence," negated any prejudicial effect resulting from prosecutor's reference during closing argument to threat posed to jurors and their children by use of firearms during commission of narcotics violations). We also note that Rodney had, in essence, an opportunity to respond to the government's initial remark (which was later repeated on rebuttal) in his own closing, during which he strongly attacked Bonner's credibility and motives for testifying. Finally, we note that the jury acquitted Rodney on some of the charges against him, a relevant factor which must be taken into account in determining whether the jury was led astray by the government's remarks. Floyd v. Meachum, 907 F.2d 347, 356 (2d Cir.1990). We conclude that under the circumstances, the alleged misconduct did not deprive defendant Rodney of a fair trial.
 
 II. William F. Metz
 
 23
 Metz raises two issues on appeal. He contends (1) that the district court erred in refusing to order disclosure of the identity of the confidential informant, and (2) that the district court erred in denying his motion for mistrial based on alleged improper cross-examination of Metz by the government.
 
 
 24
 A. Disclosure of identity of confidential informant
 
 
 25
 Detective Enoch White testified that he first met William Metz when introduced to Metz by a confidential informant on January 27, 1991. On that day, White testified that he purchased three bags of marijuana from Metz and a juvenile at Metz' residence. As background for this testimony, White also testified regarding a "controlled buy" of marijuana which had taken place at Metz' residence on January 26, 1991 through use of the confidential informant. However, these two marijuana transactions were not charged in the indictment; Metz was charged in connection with two cocaine offenses occurring on February 6, 1991.
 
 
 26
 During White's testimony, Metz' counsel requested that the government disclose the identity of the confidential informant. The government objected, contending that the informant was working with law enforcement agencies on other investigations which would be jeopardized. In addition, out of the jury's presence, the government presented the testimony of Special Agent Ford, who stated that disclosure of the informant's identity would jeopardize not only the informant's safety, but also the safety of officers working on investigations. The district court ruled that the informant's identity need not be disclosed.
 
 
 27
 On appeal, Metz contends that the district court should have required the disclosure of the identity of the confidential informant because (1) the informant's testimony would support the defense of entrapment, and (2) the informant's testimony could have been used to impeach the testimony of law enforcement personnel, including, presumably, the testimony of Detective White.
 
 
 28
 The Supreme Court has recognized that the government has a privilege not to disclose the identity of persons who furnish information regarding violations of the law. Roviaro v. United States, 353 U.S. 53 (1957). However, this privilege is limited "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" Id. at 60-61. There is no fixed rule which establishes when an informant's identity must be disclosed. Rather,
 
 
 29
 [t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 30
 Id. at 62. This Court has held that where the district court undertakes the balancing required by Roviaro, our review is limited to determining whether the district court committed an abuse of discretion which resulted in substantial prejudice. United States v. Straughter, 950 F.2d 1223, 1232 (6th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992).
 
 
 31
 Disclosure of an informant's identity has been required when the informer was an eyewitness to, and in fact a participant in, the exchange of contraband by the defendant seller. See United States v. Barnett, 418 F.2d 309, 311-12 (6th Cir.1969) (informant accompanied government agent to purchase whiskey); United States v. Lloyd, 400 F.2d 414, 415-16 (6th Cir.1968) (informant, followed by officers, purchased illegal drugs). In this case, however, the marijuana transactions in which the informant participated were not charged in the indictment, but were merely established in order to show identity, i.e., that the informant had introduced Detective White to Metz. "[D]isclosure has usually been denied when the informer was not a participant, but was a mere tipster or introducer." United States v. Sharp, 778 F.2d 1182, 1186 n. 2 (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986).
 
 
 32
 Where the defendant claims entrapment, he must present some evidence of entrapment before the government is called upon to disclose the identity of an informant. Id. at 1187. Here, Metz' entrapment defense was based on his own uncontradicted testimony as to several phone calls which he received from the confidential informant. As the district court properly noted, Metz' entrapment defense was weak. See Mathews v. United States, 485 U.S. 58, 66 (1988) (noting that evidence that government agents merely offered an opportunity for the commission of the crime would be insufficient to warrant an entrapment instruction).[2] Assuming that Metz had presented stronger evidence in support of an entrapment defense, however, the government met its burden of supporting its contention that the informant's identity should not be disclosed, by presenting evidence (1) that the informant was involved in ongoing investigations, and (2) that the informant or law enforcement agents might be endangered if the informant's identity were revealed. The court properly weighed this interest against Metz' need for the testimony, concluding that the balance weighed in favor of nondisclosure because the informant's testimony would be merely cumulative. The district court did not abuse its discretion.
 
 
 33
 B. Prosecutorial misconduct during cross-examination of Metz
 
 
 34
 Metz argues that the government committed highly prejudicial misconduct in cross-examining him concerning possible death threats made by Metz on the lives of Detective White and the confidential informant. On cross-examination of Metz, government counsel asked a series of questions attempting to elicit whether Metz had told a woman that someone was going to "put a hit" on Detective White and the confidential informant. This questioning prompted denials by Metz, who eventually objected and moved for a mistrial. The district court found the questioning to be relevant, but nonetheless ordered that because Metz had denied making the threat, the line of questioning should be discontinued. The court also instructed the jury to disregard the last question asked before the objection.
 
 
 35
 Spoilation evidence, including evidence that the defendant attempted to bribe or threaten a witness, is admissible to show consciousness of guilt. United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987). Metz argues that the wrong committed by the prosecutor in this case was in attempting to create an impermissible suggestion of murder threats, where no basis existed for asking the improper questions. "Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." United States v. Katsougrakis, 715 F.2d 769, 779 (2d Cir.1983), cert. denied, 464 U.S. 1040 (1984). The government did identify a good faith basis for asking the allegedly improper questions: the confidential informant had told a government agent that a "hit" had been put on his life and on the life of Detective White. The government identified, by name, a source for this information.[3] While the information was multiple hearsay, it did provide a basis for the government's inquiry. Moreover, upon objection, the district court promptly put an end to the line of questioning. Under the circumstances, we conclude that any misconduct which may have been committed was harmless error.
 
 CONCLUSION
 
 36
 For the foregoing reasons, we AFFIRM the judgment of the district court in both cases.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 At the conclusion of the trial of this case, the district court instructed the jury, inter alia, that "The opening statements and the final arguments of counsel are not evidence in the case."
 
 
 [2]
 In spite of misgivings, the district court did instruct the jury on the defense of entrapment
 
 
 [3]
 The source was identified as Terra Rae Williams, the girlfriend of the confidential informant