OPINION *Page 2 
{¶ 1} Defendant-appellant Chad Randolph appeals from his conviction and sentence in the Morrow County Court of Common Pleas on one count of aggravated robbery in violation of R.C. 2911.01 (A) (1), with a firearm specification in violation of R.C. 2941.145. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 1, 2007, at approximately 12:15 p.m. Steven Kirk was riding his motorcycle. He stopped at the home of his friends, Ronald Rathburn, and his son, Jeremy Rathburn. As Mr. Kirk was pulling into the driveway, appellant pulled in the driveway. Appellant was driving his father's 1994 maroon Buick. Yelling through the passenger window of the vehicle, appellant displayed a handgun, pointed it at Mr. Kirk and demanded money. Appellant insisted Mr. Kirk owed him money for a broken windshield from an incident approximately one (1) year ago. Appellant demanded $400.00. Mr. Kirk told appellant he only had $14.00 or $15.00 on him. Appellant became angry and got out of the car. Appellant walked closer to Mr. Kirk and pointed the gun at him. Appellant fired a shot next to Mr. Kirk. Mr. Kirk gave appellant his wallet. Appellant then told him he wanted the rest of the money. Appellant further indicated that the victim had credit cards. Mr. Kirk informed appellant he needed his wallet back to use his credit cards to get the money. Appellant took the money from Mr. Kirk's wallet, and then threw the wallet back to Mr. Kirk. Appellant then drove away.
 {¶ 3} Inside their residence, Jeremy Rathburn witnessed the confrontation between Mr. Kirk and appellant. Upon seeing a gun, Jeremy told his father, Ronald Rathburn to get off the internet so that he could call 9-1-1. Jeremy was talking to Kathy *Page 3 
Ritsch, a Morrow County Sheriff Office dispatcher, as appellant was still at the scene. The 9-1-1 tape was presented as evidence at trial. Before the appellant left, Jeremy Rathburn gave Dispatcher Ritsch what he thought to be the first three (3) letters on the plate of the vehicle driven by appellant, "DVM." Jeremy at first indicated he could not identify the person with the gun. Later, Jeremy informed the dispatcher that appellant was the person with the gun. Jeremy knew appellant as a neighbor and from school. The dispatcher ran appellant's name, but could not locate a vehicle registered in his name. However, the dispatcher had been married to a relative of appellant and knew the name of appellant's father. She ran that name through LEADS and came back with a maroon 1994 Buick, with license plate number "DWM" 4312.
 {¶ 4} Ronald Rathburn, who also knew the appellant, identified him as the person who had the confrontation with Mr. Kirk. Ronald Rathburn also saw the handgun and saw the appellant discharge the gun.
 {¶ 5} Steven Kirk was speaking with Dispatcher Ritsch when units arrived. Deputy Ginn, Deputy Harr, Sgt. Shipman, and Sheriff Brenneman arrived. Deputy Ginn secured the scene as Deputy Harr and other units went to look for the appellant. During a search of the area, a 9 mm casing was found. In addition, skid marks were identified.
 {¶ 6} Deputy Han went to appellant's grandparents and parents and could not locate appellant. He later went back to the appellant's parents, saw the 1994 maroon Buick, but could not locate the appellant. On October 11, 2006, appellant turned himself into the Morrow County Sheriff's Office. While there he commented, "I'm being charged with aggravated robbery. I do not even own a green handgun." *Page 4 
 {¶ 7} Appellant's version of the events agrees in part with what occurred. Appellant contends that the events occurred at 9:00 a. m., and that the state's witnesses had contrived their story before calling the police some three hours later. Appellant admitted that he openly confronted Stephen Kirk regarding the broken windshield. Appellant testified that Mr. Kirk, completely exasperated, replied, "I have no money." Mr. Kirk pulled out his wallet and, in frustration, tells the appellant, "Look for yourself." Appellant then left. Appellant denied demanding money, having a firearm or using force against Mr. Kirk.
 {¶ 8} After hearing the evidence the jury found appellant guilty of aggravated robbery with a firearm specification. Appellant filed a written Motion to Set Aside the Verdict pursuant to Rule 29, Ohio Rules of Criminal Procedure on October 1, 2007. Sentencing and a hearing on said motion was set for November 16, 2007. In the interim, appellant's trial counsel withdrew as counsel and appellant's appellate attorney entered his appearance.
 {¶ 9} On November 16, 2007 overruled the Motion to Set Aside pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. Sentencing was continued until December 3, 2007. On that date, the Court sentenced appellant to seven (7) years on the Aggravated Robbery and three (3) years consecutive for the firearm specification.
 {¶ 10} Appellant timely appealed and submits the following five assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT VIOLATED MR. RANDOLPH'S SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION *Page 5 
WHEN IT IMPOSED A NON MAXIMUM SENTENCE FOR THE AGGRAVATED ROBBERY COUNT, WHEN IT IMPOSED MORE THAN THE MAXIMUM SENTENCE.
 {¶ 12} "II. MR. RANDOLPH'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS DENIED WHEN HIS ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 13} "III. MR. RANDOLPH WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO CROSS EXAMINE THE ALLEGED VICTIM WHEN HE WAS DENIED THE OPPORTUNITY TO PRESENT COLLUSION AND THEREFORE BIAS BETWEEN TWO OF THE WITNESSES, STEPHEN KIRK AND RON RATHBURN.
 {¶ 14} "IV. MR. RANDOLPH WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO TRIAL IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION DUE TO PROSECUTORIAL MISCONDUCT.
 {¶ 15} "V. THE GUILTY VERDICT TENDERED BY THE JURORS WAS AGAINST THE GREATER WEIGHT OF EVIDENCE."
 I. {¶ 16} In his first assignment of error, appellant takes exception to the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856. Appellant argues that the Legislature mandated a presumption in favor of a minimum prison sentence for first time offenders pursuant to R.C. 2929.11(B). However, appellant contends, "the Foster case attempts to supersede that legislative intent . . ." [Appellant's Brief at 4]. *Page 6 
 {¶ 17} This Court cannot declare a decision by a superior court to be unconstitutional. Article IV of the Ohio Constitution designates a system of "superior" and "inferior" courts, each possessing a distinct function. The Constitution does not grant to a court of appeals jurisdiction to reverse or vacate a decision made by a superior court. See, State, ex rel. Potain v. Mathews (1979), 59 Ohio St.3d 29, 32,391 N.E.2d 343, 345; OH. Const. art. IV, sec. 5; R.C. 2501.02.
 {¶ 18} We further note there is no constitutional right to an appellate review of a criminal sentence. Moffitt v. Ross (1974),417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKane v. Durston (1894),152 U.S. 684, 687, 14 S. Ct. 913. 917; State v. Smith (1997),80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; State v. Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823. An individual has no substantive right to a particular sentence within the range authorized by statute.Gardner v. Florida (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205;State v. Goggans, Delaware App. No. 2006-CA-07-0051, 2007-Ohio-1433
at ¶ 28. In other words "[t]he sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction . . . It is not the duration or severity of this sentence that renders it constitutionally invalid. . . ."Townsend v. Burke (1948), 334 U.S. 736, 741, 68 S.Ct. 1252, 1255.
 {¶ 19} In State v. Foster, supra, the Ohio Supreme Court found that the presumption for the shortest prison term only existed if the trial courts were free to overcome the presumption based upon the offender's history or the particular facts of the case. Id. at ¶ 96 "The natural corollary to this finding is that the legislature never *Page 7 
mandated a mandatory minimum sentence upon every offender who had not previously served a prison term." State v. Paynter, supra at ¶ 38;State v. Goggans, supra, at ¶ 20.
 {¶ 20} A trial court is vested with discretion to impose a prison term within the statutory range. See State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855 at ¶ 36. Appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. Cincinnati v.Clardy (1978), 57 Ohio App.2d 153, 385 N.E.2d 1342; State v.Goggans, supra, at ¶ 32. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant.Woosley v. United States (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley, supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence.Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. State v. Firouzmandi, supra at ¶ 56; State v.Goggans, supra, at ¶ 32.
 {¶ 21} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that *Page 8 
his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 22} In the case at bar, appellant was found guilty of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01 (A) (1), with a firearm specification in violation of R.C. 2941.145. The penalties for felonies of the first degree are set forth in R.C. 2929.14, which provides that first-degree felonies are punishable by prison terms from three to ten years. The trial judge in this case sentenced appellant to a term of seven years on the aggravated robbery. R.C. 2929.14(E) (1) (a) mandates the prison term for conviction of a firearm specification be served consecutively to the prison sentence for the underlying felony.
 {¶ 23} We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 24} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11. (Sent., Dec. 3, 2007 at 12; 13-14). Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant to the aggregate term of ten (10) years incarceration.
 {¶ 25} Appellant's first assignment of error is overruled. *Page 9 
 II. {¶ 26} Appellant's second assignment of error claims that he was denied the effective assistance of counsel. Appellant specifically claims that he was denied such assistance because of trial counsel's failure to file a demand for discovery. We disagree.
 {¶ 27} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 28} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 29} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's *Page 10 
unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra; Bradley, supra.
 {¶ 30} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 31} The record simply does not support appellant's argument. Even a cursory review of the trial court file reveals that the State filed a Bill of Particulars on June 20, 2007; and replies to "the Request for Discovery of the Defendant" on June 21, 2007, September 19, 2007 and September 24, 2007. Appointed counsel originally represented appellant. Appellant's trial counsel was retained to represent him. In his motion for a continuance of the trial date, appellant's trial counsel stated, "Counsel is advised that Mr. Randolph has made several requests for the file from [appointed counsel] and has only been provided with a copy of the Indictment, the police report, and the statements of 3 witnesses with Xerox copies of photographs . . ." (Motion for Continuance of 16 July Jury Trial Date, filed July 5, 2007). The record further reveals trial counsel's familiarity with the 911 tapes, the physical evidence and the police reports. (1T. at 30-31).
 {¶ 32} Hence, not only did counsel's actions fail to result in a substantial violation of his duties, but appellant was in no way prejudiced. Appellant's second assignment of error is feckless.
 {¶ 33} Appellant's second assignment of error is denied. *Page 11 
 III. {¶ 34} In his third assignment of error appellant argues that the trial court erred by excluding evidence of the bias of two of the state's witness. We disagree.
 {¶ 35} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027. Generally, all relevant evidence is admissible. Evid. R. 402.
 {¶ 36} In the case at bar, appellant sought to introduce evidence concerning the supposed sexual relationship between two of the State witnesses. The trial court ruled that the evidence was too speculative and that any probative value was substantially outweighed by the danger of unfair prejudice.
 {¶ 37} The Sixth Amendment of the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." Davis v. Alaska, (1974),415 U.S. 308, 353. [Hereinafter referred to as "Davis"]. That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings under Pointer v. Texas, (1965), 380 U.S. 400, includes the right to conduct reasonable cross-examination. Davis,415 U.S. at 315-316.
 {¶ 38} Reasonable cross-examination includes not only the opportunity to impeach a witness: "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing *Page 12 
interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness". Davis, 415 U.S. at 316, but also the exposure of a witness' motivation in testifying: `A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is `always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence Section 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [415 U.S. 317]". Greene v. McElroy, (1959), 360 U.S. 474, 496, 3 L.Ed. 2d 1377,79 S.Ct. 1400. See also, Davis, 415 U.S. at 316-317. Olden v.Kentucky, (1988), 488 U.S. 227, 109 S.Ct. 48. [Hereinafter referred to as "Olden"]; Delaware v. Van Arsdall (1986), 475 U.S. 673, 678-679. [Hereinafter referred to as "Van Arsdall"].
 {¶ 39} Of course, a trial court can impose reasonable limits upon cross-examination: "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, `the Confrontation *Page 13 
Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' Delaware v. Fensterer (1985),474 U.S. 15, 20, 106 S.Ct. 292 (per curiam) (emphasis in original)."Van Arsdall, supra, 475 U.S. at 679.
 {¶ 40} In determining whether the confrontation clause has been violated, the focus of the prejudice inquiry "must be on the particular witness, not on the outcome of the entire trial." Van Arsdall, supra475 U.S. at 680. In Van Arsdall, supra, the United States Supreme Court held: "[w]e think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby `to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness. David v.Alaska, supra, at 318, 94 S.Ct. 1105." Van Arsdale, supra at 475 U.S. 680; See, also, Olden, supra.
 {¶ 41} In Van Arsdall, supra, the Court stated:"[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. Harrington, *Page 14 395 U.S., at 254, 23 L.Ed. 2d 284, 89 S.Ct. 1726; Schneble v.Florida, 405 U.S. at 432, 31 L.Ed. 2d 340, 92 S.Ct. 1056."
 {¶ 42} In the case at bar, appellant does not articulate with any specificity the prejudice he suffered as a result of the trial court's exclusion of the contested evidence. Nor does appellant set forth a cognizable claim that had the trial court admitted the evidence, the jury would have found him not guilty.
 {¶ 43} Appellant was not prejudiced by the trial court's exclusion of the contested evidence. The jury was informed that the Rathburns were good friends of Stephen Kirk. (1T. at 67). Mr. Kirk helped the family by giving Ron Rathburn rides to take care of his son Jeremy after Jeremy's mother passed away. (Id.). The jury was informed that Mr. Kirk and Jeremy had been living together for about three months at the time of trial. (1T. at 114). Mr. Kirk and Ron Rathburn had been friends for about six years. (1T. at 140).
 {¶ 44} We find that the jury had sufficient credible evidence from which to determine any bias of the witnesses for the state. The additional information sought to be introduced was purely speculative. (1T. at 68-70). No witness was prepared to testify that he or she had personal knowledge of the purported information. In applying the factors set forth in Van Arsdall, supra, the trial court's refusal to permit cross-examination of the witnesses on the contested issue to demonstrate bias was harmless beyond a reasonable doubt.
 {¶ 45} Accordingly, appellant's right to confront his accuser pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were not violated.
 {¶ 46} Appellant's third assignment of error is denied. *Page 15 
 IV. {¶ 47} In his fourth assignment of error, appellant maintains that during the closing argument, the prosecutor committed prosecutorial misconduct by arguing that appellant's uncle and father had lied under oath. We disagree.
 {¶ 48} According to the Ohio Supreme Court in State v. Twyford,94 Ohio St.3d 340, 354-355, 763 N.E.2d 122, 2002-Ohio-894, "the test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Thus, prosecutorial misconduct will not be grounds for reversal unless it so tainted the proceedings that it deprived the defendant of a fair trial. Id. at 221,102 S.Ct. at 948.
 {¶ 49} When misconduct occurs, the trial judge should admonish the prosecutor, and if the conduct is severe enough, admonish him within the presence of the jury. He should instruct the jury to disregard the prosecutor's statements only if requested by defense counsel. State v.Draughn (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794.
 {¶ 50} The Ohio Supreme Court overruled an appellant's prosecutorial misconduct argument based on the fact that the evidence of guilt was overwhelming, thus not following the holding in Draughn. See State v.Hand, 107 Ohio St.3d 378, 398, 2006-Ohio-18, 840 N.E.2d 151, citingState v. Rahman (1986), 23 Ohio St.3d 146, 154-155, 492 N.E.2d 401. Accordingly, based upon appellant's failure to object to the *Page 16 
statements and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.
 {¶ 51} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646. *Page 17 
 {¶ 52} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v.Maurer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. However, while a prosecutor may argue that certain evidence tends to make a witness more or less credible, he may not state his own belief as to whether a witness is telling the truth because to do so would invade the jury's responsibility to determine the weight to be given to witnesses' testimony. State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883; State v. Carpenter (1996), 116 Ohio App.3d 615, 622,688 N.E.2d 1090. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. Benge, 75 Ohio St.3d at 141,661 N.E.2d 1019, 1996-Ohio-227.
 {¶ 53} "It is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonably supports the characterization. State v. Stroud, Montgomery App. No. 18713, 2002-Ohio-940, 2002 WL 242863; State v. Gunn (Aug. 7, 1998), Montgomery App. No. 16617, 1998 WL 453845. However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt *Page 18 
and credibility, or alluding to matters outside the record. State v.Smith (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883".State v. Baker, 159 Ohio App.3d 468, 824 N.E.2d 162, 2005-Ohio-45 ¶ 19;State v. Draughn, supra, 76 Ohio App.3d at 670, 602 N.E.2d 790, 793.
 {¶ 54} In the case at bar, both sides agreed on many of the basic facts. The only real dispute concerned what time the confrontation occurred, and whether appellant had threatened Mr. Kirk with a gun. Accordingly, one version of what happened was truthful and the other was not. We note that appellant engaged in a similar attack on the State's witnesses during his closing statement. (2T. at 398; 399; 409). See,United States v. Rodney (CA 6 1993), 999 F.2d 541. In reality, each side was calling the witnesses for the other liars. However, reversible error only occurs when counsel's insinuation can be reasonably construed to be based on personal belief, or alluding to matters outside the record of the case.
 {¶ 55} In the case at bar, the State's comments that appellant's father and appellant's uncle loved him so much they would lie for him cannot reasonably be construed to be based on personal belief. We conclude that the conduct of the prosecutor in this case was neither so egregious nor pervasive that appellant was denied a fair trial. The misconduct cannot be characterized as severe.
 {¶ 56} While we do not condone the State's or the appellant's conduct of discussing the truthfulness of the testimony, considering the comments in light of the whole trial, it is not clear beyond a reasonable doubt that the jury would not have found appellant guilty absent the comments.
 {¶ 57} Appellant's fourth assignment of error is denied. *Page 19 
 V. {¶ 58} In his fifth assignment of error appellant maintains that his conviction is against the manifest weight of the evidence.[1]
Appellant once again argues that had the trial court erred by not permitting evidence concerning the supposed sexual relationship between two of the State witnesses. Appellant argues, without specificity, that had the trial court admitted that evidence "the greater weight of the evidence would have to inure to the acquitted [sic] of Chad Randolph at trial." (Appellant's Brief at 12). We disagree.
 {¶ 59} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra. *Page 20 
 {¶ 60} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 61} Although appellant cross-examined the witnesses and argued that he did not have a gun, and further that the witnesses for the State had waited several hours to report the incident to the police, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. In our disposition of appellant's second assignment of error, we have rejected the appellant's contention that the trial court erred in excluding the purely speculative and unsupported evidence concerning the supposed sexual relationship between two of the state witnesses.
 {¶ 62} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. *Page 21 Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492. In Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 63} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 64} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 65} Appellant's fifth assignment of error is denied. *Page 22 
 {¶ 66} For the forgoing reasons, the judgment of the Morrow County Court of Common Pleas is affirmed.
Gwin, J., Hoffman, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morrow County Court of Common Pleas is affirmed. Costs to appellant.
[1] Appellant does not argue that the evidence is insufficient to sustain his conviction. See, e.g State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. *Page 1